BUCK v. TOLAR *ET AL.*

(144 S. E., 1)

1. WILLS—TESTAMENTARY LIFE ESTATE CANNOT BE ENLARGED TO FEE
BECAUSE OF FAILURE OF FUTURE LIMITATION.—A life estate given
by will cannot be enlarged to a fee by reason of failure of future
limitation thereon.

2. WILLS—VALID TESTAMENTARY LIFE ESTATE WILL BE UPHELD, UN-
LESS ELIMINATION OF VOID PROVISIONS WORKS UNJUST DISTRIBU-
TION OR INVALID PART IS ESSENTIAL PART OF GENERAL SCHEME.—
Where a void remainder follows a life estate created by will, the

life estate will generally be upheld, unless elimination of void provisions will work an unjust distribution of estate, or unless the invalid part of the will is an essential part of a general scheme.

3. WILLS—LIFE ESTATES HELD VOID AS PART OF GENERAL SCHEME TO KEEP ESTATE ENTIRE FOR UNLAWFUL PERIOD, AND PROPERTY PASSED AS PART OF RESIDUARY ESTATE.—Where will directed that realty be divided between testatrix's four children equally, and that on death of children property should go to their children, grandchildren, and great grandchildren, and reciting testatrix wished that property should never be sold as long as any of her children, grandchildren, great grandchildren, or any member of her family, no matter how far off the relation, should be living, *held* that devises of life estates to children were parts of general scheme to keep the estate entire for unlawful period, and, therefore, fell with void remainder and property passed as part of residuary estate.

Before SHIPP, J., Horry, January, 1927.   Reversed.

Action by H. L. Buck, as executor of the will of Georgia Virginia Buck, deceased, against Ella Buck Tolar and others.   From the decree, the executor appeals.

*Mr. Cordie Page,* for appellant, cites: *Devolution of void later gift:* 21 R. C. L., 322, Sec. 56. *Life estate cannot be enlarged to a fee by reason of failure of future limitation:* 84 N. E., 38; 17 L. R. A. (N. S.), 216; 57 Atl., 609; 58 Atl., 36; 66 L. R. A., 408; 63 Am. Dec., 725; 94 Atl., 2; 20 L. R. A., 517; Ann. Cas., 1916-B, 240. *Effect of failure of limitation over on preceding life estate:* Secs. 247, 248, Gray's Rules Against Perp.; 31 N. E., 515; 60 Barb., 366; 5 Redf., 278; 98 N. Y., 460; 4 Sandf. Ch., 414; 21 R. C. L., 320, Sec. 54; 20 L. R. A., 517. *Property undisposed of becomes part of residuary estate; may be disposed of by trustee:* 39 Atl., 879; 64 A. S. R., 621; 76 A. S. R., 86; 55 N. E., 536.

*Messrs. Sherwood & McMillan,* for respondents, cite: *An attempt to convey an estate in fee simple and deprive purchaser of the incidents of ownership not effective in law:* 91 S. E., 294. *Void as against rule against perpetui-*

*ties:* 110 S. E., 464; 26 S. E., 716. *Void for uncertainty:* 28 S. E., 325; 102 S. E., 9.

June 30, 1928.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This action was brought in the Court of Common Pleas of Horry County on December 11, 1926, by H. L. Buck, as executor of the will of his mother, Georgia Virginia Buck, against certain devisees under said will, to obtain from the Court a construction of the will and codicil, particularly with reference to a parcel of land referred to in the will and codicil as "Dunean."

The genealogy of the family is necessary to an understanding of the discussion of the issues involved:

Georgia. Virginia Buck, the testatrix, died, leaving four children, all of age, married, and with child or children: I, Ella Buck Tolar; II, Iola Buck Burroughs; III, Jessamine Buck Richardson; and IV, Henry L. Buck.

I. Ella Buck Tolar has only one child, a son, Thomas Norman Tolar.

II. Iola Buck Burroughs has four children: (1) Edward Burroughs, over 21 years of age; (2) Jessamine Whalen, over 21 years of age; (3) Henry Burroughs, about 16 years of age; and (4) Virginia Burroughs, under 14 years of age.

III. Jessamine Buck Richardson has one child, a son, Donald Richardson, over 21 years of age.

IV. Henry L. Buck has two children: (1) Henry L. Buck, Jr., a minor over 14 years of age; and (2) Eugenia Buck, a minor under 14 years of age.

All are either parties plaintiff or defendant to this proceeding, except Edward Burroughs, Jessamine Whalen, and Virginia Burroughs, children of Iola Buck Burroughs, and Eugenia Buck, child of Henry L. Buck.

The testatrix, Georgia Virginia Buck, died November 30, 1925, leaving of force a will dated June 28, 1909, and

a codicil thereto, dated August 26, 1914, both of which have been duly admitted to probate in Horry County, and the plaintiff, Henry L. Buck, appointed executor thereof, has duly qualified.

In paragraph 1 of the main will, the testatrix provides for the payment of her debts, funeral and testamentary expenses, "and subject thereto," pecuniary legacies of $500 to each of two of her children, Ella Buck Tolar and Henry L. Buck.

In paragraph 2 of the main will, the testatrix declares: "All the rest of my property, real, personal and mixed, of which I may die seized and possessed, or to which I may be entitled in expectancy, reversion or remainder I give, devise and bequeath unto my son, Henry Lee Buck, whom I hereby appoint my executor and trustee, for the several parties hereinafter named, in trust nevertheless for uses and purposes hereinafter expressed, and the trusts hereinafter declared—that is to say:"

In subdivision A of this paragraph she directs that her residence and tract of land (containing between four and five acres), at Murrell's Inlet in Georgetown County, be held in trust for the use and benefit of her grandson, the defendant, Thomas Norman Tolar, son of her daughter, Ella Buck Tolar, for and during the term of his natural life, under certain conditions and limitations, which, in view of the fact that this provision in favor of Thomas Norman Tolar, was revoked, as will appear, by the codicil of August 26, 1914, need not be introduced into the situation which is sufficiently complicated without them.

Subdivisions B, C, D, and E of paragraph 2 and paragraphs 3, 5, and 6 of the will do not concern the present inquiry.

Paragraph 4 is as follows:

"All the rest and residue of my estate, not hereinbefore specifically devised and bequeathed, and such as may be by reason of the conditions and restrictions hereinbefore im-

posed upon said special devisees and bequests become a part of my residuary estate, I give, devise and bequeath to my said trustee, in trust for my four children, namely, Ella Buck Tolar, Henry Lee Buck, Iola Buck Burroughs, and Jessamine Buck Richardson, share and share alike (but the $500, the special bequest of my daughter, Ella Buck Tolar, in paragraph first of this instrument shall be charged to her and accounted for), for and during their natural lives, and at their deaths for and to their lineal heirs, in fee simple, *per stirpes.*

"Should either of my said children predecease me, or surviving me, die leaving no lineal descendants, then the provisions hereinbefore made, for the one or the ones so dying, shall lapse and his, her or their share shall be divided among the survivors and the children of such as may be dead, according to the statutes of South Carolina."

Five years later than the date of the main will, on August 26, 1914, the testatrix duly executed a codicil thereto, in which she declared in reference to the devise in subdivision A of paragraph 2 of the will as follows:

"Whereas, my said last will, I gave and bequeathed unto Norman Tolar all and singular that certain piece of property situated on Murrell's Inlet in Georgetown County, known as Dunean. Now I do hereby revoke said legacy to the said Norman Tolar, and in lieu thereof, I wish to divide this property among my four children, giving each a lot as near alike as it can be reasonably divided.

"Jessie to have the lot with dwelling and other outbuildings. Bell to have next lot. Iola the next. Hal the next.

"It is my wish that these lots shall never be sold as long as any of my children, grandchildren, great grandchildren, or any member of my family, no matter how far off the relation, should be living.

"Jessie's lot to be her's her life time, at her death to be Donald's his life time, at his death to go to any other child Jessie may have, his or her life time. At the death of

Jessie's children the property to go to their children if they should leave any, if not, to come back to any other child, grandchild, great grandchild, or any other relative of mine who may be living.

"Iola's to be her's her life time, at her death to go to Henry and at his death the same conditions as I have expressed in regard to Jessie's lot.

"Bell's lot to be her's her life time, at her death to go to Henry and at his death the same conditions as I have expressed in regard to Jessie's lot. (Evidently an error.)

"Bell's lot to be her's her life time, at her death Norman's and at his death, the same conditions as expressed for Iola's and Jessie's.

"Hal's to be his his life time, at his death his son Henry with the same conditions as have been expressed in regard to the other lots. It is my wish that these lots should never be sold."

The controversy is as to the effect of this part of the codicil. Both sides agree that the provisions are void as offending the rule against perpetuities, as to which we think that there can be no doubt. The executor contends that the entire provisions are void, and that the property falls under the residuary clause, paragraph 4 of the will; the defendants, that the avoidance of the provisions under the rule against perpetuities enlarges the estates of those devisees who are given life estates, into fee-simple estates.

The matter was heard by his Honor, Judge Shipp, upon the pleadings, the will, and the codicil.

Under date of January 31, 1927, he rendered a decree wherein he held, briefly:

(1) That the purpose of the testatrix was *to create a perpetuity* by giving each of her daughters, Ella Buck Tolar, Iola Buck Burroughs, Jessamine Buck Richardson, and her son, the plaintiff, H. L. Buck, an estate for life in certain designated portions of "Dunean"; at their deaths, respectively, that Thomas Norman Tolar should hold the

share of his mother, Ella Buck Tolar, for life; that Donald Richardson should hold the share of his mother, Jessamine Buck Richardson, for life; that Henry Burroughs should hold the share of his mother, Iola Buck Burroughs, for life; and Henry L. Buck, Jr., should hold the share of his father, the plaintiff, H. L. Buck, for life, with limitations over after their deaths to other grandchildren of the testatrix down to the remotest degree—the remainders being to dubious and uncertain individuals.

(2) That the limitations over are too remote, indefinite, and uncertain, cannot be practically enforced, and, therefore, void.

(3) He further held, as a consequence, that her four children above named, Ella Buck Tolar, Iola Buck Burroughs, Jessamine Buck Richardson, and H. L. Buck, are entitled to a life estate in the certain portions of "Dunean" designated for them, and that Thomas Norman Tolar, Henry Burroughs, Donald Richardson, and Henry L. Buck, the younger, are the owners in fee of the portions of "Dunean" in which their parents respectively own a life estate.

From this decree the executor has appealed, contending that his Honor should have held that, the limitations in the codicil being void for remoteness and indefiniteness, the property known as Dunean fell into the residuary clause, subject to disposition by the executor under paragraph 6 of the will. We think that the contention of the executor must be sustained.

In 21 R. C. L., 322, the rule is thus stated:

"It is sometimes said that where a devise fails and cannot be carried into effect because it violates a provision of law, the fee vests in the person or persons holding the last preceding estate. It is true that where the preceding estate is a fee simple subject to conditional limitations which are void for remoteness, the holder of the preceding estate is permitted to retain this estate in fee simple absolutely,

discharged of all conditional limitations. For example where a devise is made to a man and his heirs forever, and for want of such heirs then to a stranger in fee, the devise over to the stranger would be void for remoteness, and the first taker will have a fee simple absolute. And in like manner a limitation to one and the heirs of his body and if he dies without such heirs then over gives the first taken an estate tail on failure of the limitation over for remoteness, or in jurisdictions in which entails have been abolished the first taker will receive an absolute estate in fee simple. Similarly a legacy, given subject to a conditional limitation which is void for remoteness, vests absolutely in the first taker. *But where the devise is of a base or qualified fee with limitations over which are void for remoteness, the estate so granted will determine on the contingency named. Likewise if the holder of the preceding estate has merely a life estate it will not be enlarged by reason of the invalidity of the future limitations.* Nor will the Courts permit the rejecting of a portion of the language of a devise in such a way that by mere construction an invalid devise will be sustained. A gift which fails for remoteness is not allowed to go to the persons designated as its recipients unless they are otherwise entitled to take as heirs, next of kin or residuary legatees or devisees."

In 40 Cyc., page 1954, the rule is:

"Where the first taker under the will is given an absolute estate qualified only by a limitation over, a failure of the limitation over vests the fee in the first taker in the case of real estate or gives him an absolute ownership in the case of personal property. But the failure of the subsequent estate cannot affect the nature or validity of the prior estate, and where the intention of the testator was clearly that the first taker should not have more than an estate for life or for years, a failure of the remainder will not give him an absolute title, but on the determination of the par-

ticular estate the property belongs to the heirs at law or distributees as in case of intestacy."

This rule is supported by the following South Carolina authorities: *Finley v. Hunter,* 2 Strob. Eq., 208. *Dougherty v. Dougherty,* 2 Strob. Eq., 63. *Young v. Dinkins,* Rich. Eq. Cas., 23. *Lenoir v. Sylvester,* 1 Bailey, 632.

The life estate cannot be enlarged to a fee by reason of the failure of the future limitation. The following authorities fully sustain that statement: *Quinlan v. Wickman,* 233 Ill., 39; 84 N. E., 38; 17 L. R. A. (N. S.), 216. *Graham v. Whiteridge,* 99 Md., 248; 57 A., 609; 58 A., 36; 66 L. R. A., 408. *Brattle Square Church v. Grant,* 3 Gray (Mass.), 142; 63 Am. Dec., 725. *Goffe v. Goffe,* 37 R. I., 542; 94 A., 2; Ann. Cas., 1916-B, 240; 20 L. R. A., 517, note.

We think that his Honor erred in holding that the effect of the failure of the limitations over "is to enlarge the life estate of defendant, Donald Richardson, into a fee so that the title as to her specific portion rests in Jessamine Buck Richardson for life with remainder in fee to Donald Richardson," and with like provisions for the other defendants. The testatrix stated that Donald Richardson, and the others in like position, should hold the property "his life time."

The question arises, What effect does the failure of the limitation over have on the preceding life estates? The general doctrine is stated in Gray, Rule against Perpetuities, as follows:

"Sec. 247. If future interests in any instrument are avoided by the rule against perpetuities, the prior interests become what they would have been had the limitation of the future estates been omitted from the instrument.

"Sec. 248. If the devise of a future interest is void for remoteness, but the prior devise is for life only, or other limited period, * * * the property, after the termination of the prior interest, goes to the person to whom property which has been invalidly devised or bequeathed goes.

This person is generally the heir in case of realty, and the residuary legatee in case of personalty. There is no difference in this respect between a devise or bequest void for remoteness and a devise or bequest void for any other reason."

There are many cases holding that, where a void remainder follows a life estate, the life estate will, as a general rule, be upheld. But the invalid portion of the trust cannot be stricken off, unless it is clearly separable from the valid portions, and can be "disregarded without maiming the general frame of the will, or the testator's substantial and dominant purpose," says the Court in the case of *Re Christie,* 133 N. Y., 473; 31 N. E., 515.

The general rule above outlined is subject, however, to two exceptions growing out of the cardinal principles governing the interpretation of wills.

First, if striking out a part of the provisions and leaving the rest will work an unjust distribution of the estate, the whole must fail. In *Clemens v. Clemens,* 60 Barb. (N. Y.), 366, it was held that, where the effect of establishing portions of the provisions would be to work injustice by giving a portion of testator's "family a larger share of the estate than was intended," they will be declared void. That is just what is done in Judge Shipp's decree. Donald Richardson and the other second life tenants are given a fee when the testator intended that they should have only a life estate. It also gives them more than their portion of the estate, works an injustice to the children of the testatrix in favor of certain grandchildren which was never intended by testatrix. The cases of *Richards v. Moore,* 5 Redf. Sur. (N. Y.), 278, and *Benedict v. Webb,* 98 N. Y., 460, support the foregoing exception to the general rule.

Second. The second exception is that "if the invalid part of the will is an essential part of a general scheme, the valid antecedent estate or estates will fall with the void remainder." In the case of *McSorley v. Leary,* 4 Sandf.

Ch. (N. Y.), 414, it was held that, where the invalid portion of the will was part of testator's general scheme to keep the estate entire for an unlawful period, no part of the provisions can be sustained, but the estate to which the void provisions relate will vest immediately in the heirs.

A trust to pay the income to testator's brother during life, and after his death to divide it equally between testator's two sisters during their lives, and, upon the death of both, the whole estate to go to the child or children of one of them, is entire, and no part can be cut off so as to leave the remainder to be executed, as there is only one general scheme and it is to provide for the brother and sisters during their lives. *Knox v. Jones,* 47 N. Y., 389. To the same effect are the cases of *Eldred v. Meek,* 183 Ill., 26; 55 N. E., 536; 75 Am. St. Rep., 86. *Re Fair,* 132 Cal., 523; 60 P., 442; 64 P., 1000; 84 Am. St. Rep., 70. *Van Vechten v. Van Vechten,* 8 Paige (N. Y.), 120. *Gerber's Estate,* 196 Pa., 366; 46 A., 497. *Lockridge v. Mace,* 109 Mo., 162; 18 S. W., 1145. See *Woodruff v. Yarboro,* 144 S. C., 18; 142 S. E., 50.

In *Tilden v. Green,* 54 Hun, 231; 7 N. Y. S., 382; Id., 130 N. Y., 29; 28 N. E., 880; 14 L. R. A., 33; 27 Am. St. Rep., 487, the Court, in speaking of the rule that the void portions will be cut off and the valid portions of a will sustained, says, at page 883, N. E. (130 N. Y., 50):

"The rule, as applied in all reported cases, recognizes this limitation, that when some of the trusts in a will are legal, and some illegal, if they are so connected together as to constitute an entire scheme, so that the presumed wishes of the testator would be defeated, if one portion was retained and other portions rejected, or if manifest injustice would result from such construction to the beneficiaries or some of them, then all the trusts must be construed together, and all must be held illegal, and must fall [citing several cases]."

In the case of *Re Kountz,* 213 Pa., 390; 62 A., 1103; 3 L. R. A. (N. S.), 639; 5 Ann. Cas., 427, the Court uses the following language:

"It seems clear to us that the chief purpose of the testatrix was to tie up the estate and place it beyond the power of either children or grandchildren, to interfere with the distribution she purposed to have made after the death of all her children, and ten years after the date when her youngest grandchild should become of age. This period was too remote, and the gift made to take effect at that time is void under the rule against perpetuities. That being the case, the antecedent particular estate would fail also and the heirs at law of the testatrix are entitled to immediate possession."

In 21 R. C. L., 320, it is said:

"When a part only of a gift is invalid by reason of the rule against perpetuities and the invalid limitation is an essential part of the general scheme of the will or gift, the several parts of the devise or the grant are treated as inseparable and the whole is adjudged void. * * * But if a part of the testator's general scheme is that an estate shall be kept entire for an unlawful period, no part of the scheme can be sustained, and the estate to which the void provisions relate vests immediately in the heir."

In the present case, the latter gifts are void. The second takers did not take a fee, but only a life estate, so expressed in the will, which cannot be enlarged to a fee without violating the expressed intention of the testatrix, and at the same time making an unjust division of the estate, and that against the children of testatrix. The testatrix also states in no uncertain terms her general scheme to keep the property intact for an unlawful period. She says:

"It is my wish that these lots shall never be sold as long as any of my children, grandchildren, great grandchildren,

or any member of my family, no matter how far off the relation, should be living."

After stating this purpose, she proceeds to set out her general scheme or plan to carry out that purpose:

"Jessie's lot to be her's her life time, at her death to be Donald's his life time, at his death to go to any other child Jessie may have, his or her life time. At the death of Jessie's children the property to go to their children if they should leave any, if not, to come back to any other child, grandchild, great grandchild, or any relative of mine who may be living."

Similar provisions are made for all the others.

The provisions were not made for the purpose of bestowing the bounty on the individuals, but was a part of the general scheme to prevent the sale of the property. This must be so, for she makes the same provisions for unborn generations for whom she could not have any particular affection. The object was to keep the property so that no one could dispose of it. Had the gift been the result of an especially tender affection for the recipient, the natural thing would be for such recipient to have absolute control of the property and be able to use or dispose of it as he might choose. Not so, however; he can only hold the property during his life and let it descend to future generations to the end of time, or until the last trace of the blood of testatrix is extinct. These devises form part of the general scheme to keep the estate entire for an unlawful period, and are, therefore, void. No part of them can be sustained. Authorities cited, *supra;* 20 L. R. A. (note), 517.

These devises being void, the question arises, What becomes of the property? Or what are the powers and duties of the plaintiff as executor and trustee with respect to the property known as "Dunean"? Item fourth of the will answers the question. It provides that all property not disposed of, "and such as may be by reason of the conditions and restrictions hereinbefore imposed upon said special de-

vises and bequests *become* a part of my residuary estate, I give, devise and bequeath to my said trustee in trust for my four children, Ella Buck Tolar, Henry Lee Buck, Iola Buck Burroughs, and Jessamine Buck Richardson, share and share alike, etc." These are the heirs of testatrix under the Statute of Distributions. This property passes under this item of the will into the hands of plaintiff as trustee, and can be disposed of by him as any other portion of the residuary estate. *In re Johnston*, 185 Pa., 179; 39 A., 879; 64 Am. St. Rep., 621. *Knox v. Jones*, 47 N. Y., 389. *Eldridge v. Meek*, 183 Ill., 26; 55 N. E., 536; 75 Am. St. Rep., 86; 20 L. R. A., 517 (note).

The judgment of this Court is that the decree appealed from be reversed; the whole of the devises in the codicil declared void; and the property declared to be a part of the residuary estate disposable under paragraphs 4 and 6.

Messrs. Justices Blease, Stabler, and Carter, and Mr. Acting Associate Justice J. Wm. Thurmond concur.

Mr. Justice Blease: I agree with Mr. Justice Cothran that the limitations in the codicil of the remainder in fee of the lots to the grandchildren of the children of testatrix are void for remoteness. These limitations to the other children, grandchildren, etc., of testatrix are the same as those annexed to the gift to Jessie, which is as follows:

"Jessie's lot to be her's her life time, at her death to be Donald's (son of Jessie) his life time, at his death to go to any other child Jessie may have, his or her life time. At the death of Jessie's children the property to go to their children if they should leave any, if not, to come back to any other child, grandchild, great grandchild, or any other relative of mine who may be living."

An analysis of this will show that (1) Jessie had a life estate; (2) Donald a life estate; (3) "any other child" of Jessie a life estate; (4) remainder in fee to the children

of Jessie's children; and (5) executory devise to "any other child, grandchild, great grandchild, or any other relative" of testatrix living at the time of the falling in of the last life estate.

Unquestionably, Jessie and Donald were persons in being at the time the will took effect, and, were there nothing else in the codicil, they would have vested estates—Jessie a vested life estate in possession and Donald a vested estate for life in remainder, expectant upon the falling in of the life estate of Jessie. "Any other child" of Jessie does not necessarily mean only one person, but may have reference to more than one or to many. 3 C. J., p. 231. I think here it meant any other child or children. It is immaterial whether such other child or children took a vested or contingent life estate in remainder, expectant upon the falling in of the preceding life estates, such life estate is not too remote, since whatever "any other child" or children Jessie may have will necessarily be in being within the time allowed by the rule against perpetuities.

The limitation of the remainder in fee is not so simple. Had the limitation been only to the children of Donald, it would have been good, since Donald was a person in being, and all his children would necessarily be in being within the time allowed by the rule. But the limitation is not to the children of Donald only, but to the children of Jessie's children. The Court is not concerned with the ages of Jessie's children, for the reason that, for the purpose of determining questions of remoteness, and applying the rule against perpetuities, both men and women are considered capable of having issue so long as they live. Sections 215 and 376, Gray, Perpetuities. Jessie may have children born after the death of testatrix; therefore, it could not be said at the time of the death of testatrix that all the grandchildren of Jessie would necessarily be born within 21 years after the death of Jessie. Since Donald was a person in being at the death of testatrix, his child or children living

at the time of the death of testatrix, or if none then *in esse,* then the first child thereafter born, would take a vested remainder in fee, subject to open to admit after-born children. But, since the number of the grandchildren of Jessie in whom the remainder in fee is to vest in possession, and consequently the size of the shares each is to receive, cannot be determined till too remote a period, the whole devise to the grandchildren of Jessie is invalid as too remote. Sections 110a, 205a, and 972, Gray, Perpetuities. For the same reason, the executory devise is void for remoteness.

I also concur with Mr. Justice Cothran in holding that Donald's (and the others of like status) life estate was not enlarged into a fee simple estate. The fee must revert and pass under the residuary clause of the will. I think it is clear that testatrix did not intend so much to give a beneficial life interest to the designated life tenant as to designated persons in whom the title should vest. The life estates only formed part of the general scheme to keep the estate entire for an unlawful period, and, since a part is void, the whole must fall. In this particular, this case is clearly distinguishable from *Woodruff v. Yarbrough,* 144 S. C., 18

Mr. JUSTICE STABLER and Mr. ACTING ASSOCIATE JUSTICE J. WM. THURMOND concur.