108 N.J. Super. 222 (1970)
260 A.2d 533
SHIRLEY YERZY AND RICHARD YERZY, HER HUSBAND, PLAINTIFFS-APPELLANTS,
v.
DAVID LEVINE, M.D., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 20, 1969.
Decided January 15, 1970.
*223 Before Judges KILKENNY, LABRECQUE and LEONARD.
Mr. Lawrence D. Smith argued the cause for appellants (Messrs. Hein, Smith, Mooney & Berezin, attorneys).
Mr. John J. Francis, Jr. argued the cause for respondent (Messrs. Shanley & Fisher, attorneys).
The opinion of the court was delivered by LABRECQUE, J.A.D.
In this suit alleging medical malpractice plaintiffs appeal from a judgment in favor of defendant.
On January 16, 1964, while a patient in Barnert Memorial Hospital, Paterson, plaintiff Shirley Yerzy came under the surgical care of defendant. She had previously suffered several gall bladder attacks and defendant diagnosed her condition as chronic cholelithiasis (chronically inflamed gall bladder with stones). On his recommendation plaintiff consented to surgery for removal of the gall bladder. The operation took place on January 17. On the second day thereafter plaintiff observed a large quantum of bile, which was staining, saturating and seeping through the padding which covered *224 her surgical incision, and accompanied by pain in the right side of her back. The heavy drainage persisted throughout her stay in the hospital.
When Mrs. Yerzy questioned defendant he attributed the unusual, heavy bile drainage to a loosening of a suture at the cystic duct, and suggested that plaintiff "wait and see, perhaps nature will take care of it and it will close up by itself." He told her this notwithstanding that he had never seen a suture loosen at the cystic duct. By January 27, when the time for Mrs. Yerzy's discharge was at hand and the drainage had not stopped, he ordered X-rays (an intravenous cholangiogram) for the asserted purpose of effectuating a visualization of the common bile duct. Because the dye used had not been properly absorbed so as to permit visualization, the X-rays were negative.
By this time defendant, after telling Mr. Yerzy that his wife had a biliary fistula, recommended that she be examined by someone with more experience. In line with this, following her discharge from the Barnert Hospital she was admitted to the New York Hospital, where she came under the care of a Dr. Glen (who, along with another, had been recommended by defendant). Dr. Glen performed a second operation on February 3, 1964 which revealed that the common bile duct had previously been completely severed.
Mrs. Yerzy testified she was not thereafter informed of the real nature of the condition found or its relationship to the manner in which the first operation had been performed. She was told by Dr. Glen only that her bile duct had been found to be "interrupted." She thought he also said there was a stone in the duct.
For better understanding of the contentions of the respective parties, we are told that the gall bladder is located on the underside of the liver and that it discharges concentrated bile through the cystic duct into the common bile duct which in turn discharges into the upper end of the small intestine. Bile (not concentrated) is also discharged directly from the liver through the hepatic duct into the common bile duct. *225 Thus severance of the common bile duct permitted bile to be freely discharged from the liver into the upper abdominal area.
Dr. Levine testified that prior to beginning the removal of Mrs. Yerzy's gall bladder he palpated the common duct and found nothing abnormal. During the course of the removal of the gall bladder he "dissected out" the cystic duct, i.e., it was ligated in two places and then cut in-between, so as to sever the gall bladder from it. The operation did not call for surgery of the common duct, which was beyond, and at the other end of the cystic duct. While Dr. Levine denied severing it, he conceded that "apparently it must have happened" at the time of his operation.
Mrs. Yerzy testified that her knowledge of her true condition and defendant's responsibility in connection with it began with her discovery, on a visit to the New York Hospital sometime in the first half of 1966 for further X-rays, that her bile duct had been severed. Her complaint was filed on October 6 of that year. The first count charged medical malpractice and the second, fraudulent concealment by defendant of his asserted negligence in severing the common duct during the operation. The answer filed by defendant set up, among others, the defense of the statute of limitations (N.J.S.A. 2A:14-2).
Thereafter, defendant moved to dismiss the first count on the ground that it was barred because not brought within two years of the time of the operation. Plaintiff opposed the motion on the ground that the "discovery rule" was applicable; hence the statute did not begin to run until plaintiff knew or should have known of the condition from which she was suffering and the existence of a cause of action against defendant based upon it. Fernandi v. Strully, 35 N.J. 434, 450 (1961). The motion was granted.
Thereafter, there was a jury trial as to defendant's liability under the second count. The trial judge (not the one who granted the motion), in submitting the case to the jury, directed it to first find whether defendent had been guilty of *226 medical malpractice, and thereafter determine whether there had been fraudulent concealment of that fact by him. The jury, by a vote of 11 to 1, found malpractice proximately resulting in damages to plaintiffs but no fraudulent concealment. It was unable to agree upon a special verdict as to a third issue, whether it was before or after October 6, 1964 that "Mrs. Yerzy knew or discovered, or with reasonable diligence should have discovered, Dr. Levine's claimed malpractice proximately causing her injuries." The present appeal challenges both the concomitant judgment for the defendant and the dismissal of the first count.
As to the first count, we are confronted with a simple issue  whether the two-year period prescribed by N.J.S.A. 2A:14-2 began to run on the day of plaintiff's operation, or on the day that plaintiff first knew or should have known of her condition and defendant's alleged responsibility for it. If the latter rule applied it was error to dismiss.
The discovery rule appears to have been first enunciated in the case of Hahn v. Claybrook, 130 Md. 179, 100 A. 83, L.R.A. 1917C, 1169 (Ct. App. 1917). See Prosser, The Law of Torts (3d ed. 1964) § 30, at 148; Annotation, 80 A.L.R.2d 368, 388 (1961). In this State it was held applicable for the first time to a medical malpractice case in Fernandi v. Strully, supra. In that case, following a hysterectomy, the operating surgeon permitted a wing nut from a surgical instrument to remain in plaintiff's body. Suit was not instituted until more than two years following the operation. In reversing the dismissal of the suit it was held that the period of limitation began to run when plaintiff knew or had reason to know of the presence of the foreign object in her body and of the existence of the cause of action against defendant based upon its presence (at 450). The court there noted:
It must be borne in mind that Mrs. Fernandi's claim does not raise questions as to her credibility nor does it rest on matters of professional diagnosis, judgment or discretion. It rests on the presence of a foreign object within her abdomen following an operation performed upon her by the defendant-doctors. Here the lapse of time *227 does not entail the danger of a false or frivolous claim, nor the danger of a speculative or uncertain claim. The circumstances do not permit the suggestion that Mrs. Fernandi may have knowingly slept on her right but, on the contrary, establish that the cause of action was unknown and unknowable to her until shortly before she instituted suit. Justice cries out that she fairly be afforded a day in court and it appears evident to us that this may be done, at least in this highly confined type of case, without any undue impairment of the two-year limitation or the considerations of repose which underlie it. If, as is to be hoped, the resulting jeopardy to defendants produces a greater measure of care in connection with surgical operations, so much the better.
See also Morgan v. Grace Hospital, Inc., 149 W. Va. 783, 144 S.E.2d 156, 161-162 (W. Va. Sup. Ct. App. 1965), and Waldman v. Rohrbaugh, 241 Md. 137, 215 A.2d 825, 830 (Ct. App. 1966).
In Rothman v. Silber, 90 N.J. Super. 22 (App. Div. 1966), certif. den., 46 N.J. 538, (1966), we found Fernandi inapplicable to a case where the malpractice charged was the negligent administration of a "saddle block" anesthesia. In doing so we noted, among other things, that we were dealing with a drug which was intended to be incorporated into the body and would lose its identity quickly after injection, and liability for the administration of which would necessarily depend upon expert testimony. We concluded that it could not be said that the lapse of time did not entail danger of a false or frivolous claim.
Since our decision in Rothman v. Silber, the Supreme Court has spoken further. In Rosenau v. New Brunswick, 51 N.J. 130 (1968), it held that, on a homeowner's strict liability claim for damage to property against the manufacturer of a water meter which had burst, his cause of action accrued at the time the defect in the meter was discovered (which was also when the damage occurred) nothwithstanding the lapse of 22 years between the time the meter left the manufacturer's hands and the time of the damage.
Again, in New Market Poultry Farms, Inc. v. Fellows, 51 N.J. 419 (1968), where plaintiff's cause of action against *228 a firm of professional engineers was based upon an erroneous land survey made in 1952, it was held that the cause of action accrued, not when the error was committed but when, in 1963, it was discovered. The court there held:
Here as in Fernandi, supra, 35 N.J. 450 (1961) the credibility of plaintiff's claim is not questioned and the incontestable factual pattern presented to us on this motion bespeaks the probability of defendant's negligent fault in the acreage calculation. The passage of time does not entail the danger of a fraudulent, false, frivolous, speculative or uncertain claim. Nor is such danger even suggested by defendants. Further, under the said facts it does not appear possible that by reason of the passage of time defendant's testimonial proof of a defense would be made more difficult. The circumstances so portrayed do not permit a suggestion that Mrs. Pack knowingly slept on her rights but to the contrary establish that she brought suit expeditiously after she discovered her alleged actual damage. Accordingly we hold that under the facts and circumstances as presented, the motion for summary judgment should have been denied. Such a result, as noted, is consistent with Fernandi and in harmony with the trend in other jurisdictions. [at p. 425]
In Diamond v. New Jersey Bell Telephone Co., 51 N.J. 594 (1968), plaintiff sued, among other things, for the cost of repairing damage to its sewer line sustained on February 1, 1966 due to defendant's alleged faulty installation of an underground conduit in 1957. Suit was not instituted until July 1966. As in the instant case, there was a motion for dismissal on the ground that the action was barred by the statute of limitations. In upholding denial of the motion the Supreme Court again applied the discovery rule, holding that the cause of action accrued when the plaintiffs knew or should reasonably have known of the damage. The court there noted:
In New Jersey, the discovery rule has, to date, been applied only in certain limited circumstances  in a foreign object malpractice case (Fernandi v. Strully, supra) and in the case of a negligent land survey (New Market Poultry Farms, Inc. v. Fellows, supra). We have recognized, however, that other situations may well be appropriate for extension of the same salutary rule. See Fernandi v. Strully, supra, 35 N.J., at p. 439. For reasons to be expressed, we are of the opinion that the case before us presents one such appropriate instance. [at 597]
*229 And further:
We are in agreement with the above decisions holding that to permit the running of the limitations period while a plaintiff's injury is hidden from observation beneath the ground would be overly harsh and unjust. We accordingly hold that the discovery rule extends where, as here, the location of the negligent conduct and resultant harm beneath the surface of the earth prevents the injured party from immediately ascertaining the harm inflicted. Courts have always "sought to apply [the statute of limitations] with due regard to the underlying statutory policy of repose, without, however, permitting unnecessary individual injustices." Fernandi v. Strully, supra, 35 N.J., at p. 449. This standard, in cases such as the one at hand, demands that the limitations period not commence at least until the harm incurred by a plaintiff becomes reasonably apparent or ascertainable. See 63 Harv. L. Rev. 1177, 1204 (1950). [at 600]
After holding that the facts entitled plaintiffs to the benefit of the discovery rule, the court expressed its desire "to postpone discussion of the ultimate bounds of the discovery rule until appropriate cases arise." [at 601]
Upon consideration of the foregoing, we are satisfied that the rationale underlying Fernandi v. Strully, and reiterated in Rosenau, New Market and Diamond, is fully met by the factual pattern here. The severing of the common duct and the closing of the operative site without repairing it, like the leaving of the wing nut in Fernandi, were actions which themselves bespoke negligence. Mrs. Yerzy's claim does not raise questions as to her credibility, nor does it rest on matters of professional diagnosis, judgment or discretion. Rather, it depends upon proof of the severance during surgery of a portion of her anatomy which was not supposed and never intended by defendant to be the object of such surgery. The finding of the severed bile duct is undisputed, so that the lapse of time does not entail the danger of a false or frivolous claim, or one which is speculative or uncertain. The circumstances alleged by plaintiffs, if established at trial, do not permit the suggestion that they slept on their rights.
We conclude that to give plaintiffs their day in court will work no undue impairment of the two-year limitation or the *230 reasons which underlie it. If an action may be maintained for the negligent breaking of a pipeline which was underground and thus concealed from view, where the negligence took place nine years before the bringing of the suit, it would be incongruous indeed to deny recovery to a patient for the negligent severing some 30 months before the institution of suit, of an equally concealed portion of her anatomy.
In the context of the pleadings and in view of the facts developed thus far, Mrs. Yerzy and her husband should be afforded their opportunity to establish that Mrs. Yerzy first knew or had reason to know of defendant's severance of her common bile duct, and of the existence of a cause of action against him based thereon, within a period of two years prior to institution of her suit. Accord, Wilkinson v. Harrington, 243 A.2d 745 (R.I. Sup. Ct. 1968). While defendant asserts that by reason of Mrs. Yerzy's contacts with the medical profession, and of certain information given her by Dr. Glen following the operation, those operative facts should have been known to her shortly after March 1964, at the latest, we are without doubt that as the matter now stands, the issue is one for resolution by the trier of the facts.
The judgment of dismissal as to the first count is accordingly reversed and the case remanded for further proceedings theron.
The question remains whether in view of the jury's previous finding of negligent malpractice on defendant's part, that portion of the verdict should stand and the retrial be confined to the issue of whether a recovery by plaintiffs is barred by the statute of limitations. We hold this to be the proper course. Negligence was charged in the second count. In the exercise of his discretion as to procedure, the trial judge required the case to be tried as to the issues of negligence and proximate cause, and those issues were submitted to the jury. The jury was instructed that "the first question" it was to determine was whether "Dr. Levine [was] guilty of malpractice * * * which proximately caused damages to the plaintiffs." Later, after an unobjectionable charge bearing *231 on those issues, it was instructed, "If you find that he was not guilty of malpractice that proximately caused the injuries then your consideration of the case is at an end and you will return a verdict of no cause for action * * *." It is hardly to be doubted that, had an adverse verdict been rendered as to malpractice, it would have precluded plaintiffs from again litigating that issue. We see no reason why defendant should not be equally bound by it. Although there was an objection by defendant to the receipt of proofs as to malpractice and submission of that issue to the jury, there was no motion for a continuance and there is no cross-appeal.
By reason of the foregoing we find it unnecessary to pass upon the issues raised by plaintiffs' second point.
Since the sole issues remaining for determination at the retrial are (1) whether under the discovery rule, plaintiffs may recover, and (2) the extent of the damages recoverable, we leave it to the trial court to determine whether, in view of the reduction in the number of issues, they may be tried together.
Reversed and remanded for further procedings in accordance with this opinion.