148 N.J. Super. 56 (1977)
371 A.2d 827
SAUNDRA DRAZIN AND ROBERT DRAZIN, PLAINTIFFS,
v.
ORTHO PHARMACEUTICAL CORPORATION, A CORPORATION, AND WYETH LABORATORIES, A CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Law Divisions.
Decided January 21, 1977.
*57 Mr. Thomas Warshaw, for plaintiffs (Messrs. Drazin and Warshaw, atorneys).
No one appearing for defendant Ortho Pharmaceutical Corp. (Messrs. Porzio, Bromberg & Newman, attorneys).
No one appearing for defendant Wyeth Laboratories (Messrs. Carton, Nary, Witt & Arvanitis, attorneys).
SELIKOFF, J.S.C.
Plaintiff Saundra Drazin for some time used "Ortho-Novum," an oral contraceptive, which she *58 alleges was prescribed for her by one Dr. William Shanik. In May or June 1973, plaintiff discontinued using Ortho-Novum and under prescription by a Dr. Sophia Preikstas, began using a contraceptive known as "Orval." Apparently both drugs were distributed by their manufacturers with warnings concerning possible harmful side effects. Plaintiff alleges that neither doctor discussed any such possibility with her.
In December, 1973, while on vacation in Florida plaintiff suffered a numbness and a burning sensation in her left hand and arm. The condition was diagnosed as a "bruit," which was corrected by two operations involving a subclavian arterial bypass.
Plaintiff remained in Florida until about April, 1974, undergoing treatment and observation, and then returned to New Jersey. Aside from this four-month period, plaintiff was not otherwise treated for the condition. Plaintiff states that the incident manifested itself in pain to her hand and arm and that the pain has since subsided.
Plaintiff brought suit on January 27, 1975 against the two present defendants who are the respective manufacturers of "Ortho-Novum" and "Orval." The suit is predicated on the theories that the drugs were negligently manufactured and that defendants breached warranties for fitness for human consumption.
On August 23, 1976 Dr. William Shanik was deposed. He testified that he was aware that the drug might have side effects. He further testified in April 1973 that he was aware of the contents of the Physician's Desk Reference as it applied to "Ortho-Novum" and of the contents of any pamphlets that were distributed with "Ortho-Novum" at that time.
Plaintiff subsequently moved to amend her complaint to name Dr. Shanik and Dr. Preikstas. She alleges that at the time oral contraceptives were prescribed the doctors knew them to be potentially unsafe but failed to inform her of the risks involved. She insists that she was unaware of any possible cause of action against the doctors until Dr. Shanik's deposition.
*59 The problem here is the statute of limitations. Plaintiff seeks to add new parties defendant more than two years after her injury. See N.J.S.A. 2A:14-2.
She cites several cases for the proposition that liberality is ordinarily exercised in granting leave to amend pleadings in order to effect a just resolution of each cause, and that in consonance with this philosophy pleadings may be amended even though an original action might be barred by the statute of limitations. Tackling v. Chrysler Corp., 77 N.J. Super. 12, 16 (Law Div. 1962); John Hancock Mut. Life Ins. Co. v. Fiorilla, 83 N.J. Super. 151, 156 (Ch. Div. 1964); De Sisto v. Linden, 80 N.J. Super. 398, 404 (Law Div. 1963); Smith v. Thermo-Fax Corp., 53 N.J. Super. 102, 105 (Law Div. 1958); Jersey City v. Hague, 18 N.J. 584, 602 (1955).
In all of these cases the amendments were permitted after the statute had run. The reasons expressed were essentially that the gist of the cause of action remained the same and no new party was sought to be added or, if a new party was sought to be added, that new party had actual notice of suit. (In both John Hancock and Smith, supra, the proposed new defendant had accepted service for the named original defendant).
Plaintiff wishes to assert an entirely new cause of action against entirely new defendants. Against the present defendants, she must establish negligent manufacture or that the drugs were unreasonably dangerous. Against the doctors she must establish the standard of care in the profession relating to the prescription of and treatment with oral contraceptives, and that the proposed defendants breached that standard. Further, there is no suggestion that either doctor had any more than casual notice of this suit before August 1976.
Plaintiff next contends that the relationship between the original parties and the physicians indicates that they are part of one cohesive unit, and suit against one tolls the statute of limitations against the other. TACA Internat'l Airlines Inc. v. Rolls-Royce Ltd., 84 N.J. Super. 140 (Law *60 Div. 1964); Dunlevy v. Martin Dennis Co., 30 N.J. Super. 446 (Law Div. 1954). In Taca, the court assessed the capital structures, personnel, operation and other attributes of Rolls-Royce, Canada, Rolls-Royce Ltd., and Rolls-Royce, Inc. It found that the three entities were so intermeshed that service upon one was notice sufficient to pass muster under due process standards as to the other two entities. Suffice it to say that plaintiff has demonstrated no such interrelationship between the present defendants and the proposed defendants.
Plaintiff contends that the proposed amendment should relate back to the time the original complaint was filed, but offers no authority for this proposition. Sinatra v. Nat'l X-Ray Products, 26 N.J. 546, 556 (1958), is cited but is factually distinguishable. In Sinatra the amendment related back, but the motion to amend was brought before the statute of limitations had run, as the statute had been tolled by N.J.S.A. 2A:14-22 (relating to nonresident defendants).
Plaintiff also contends that defendants should be estopped from pleading the statute as both had notice of the action before the statute had run. It does not appear that either defendant had any more than casual knowledge of plaintiff's suit or its underlying facts, but not such knowledge as would suggest possible involvement. (It must be remembered that neither of the proposed defendants treated the plaintiff for any condition arising out of the December 1973 incident.)
There is no merit to plaintiff's contention that a denial of this motion will preclude a consideration on the merits and deny her substantial justice. Whether the motion is granted or denied, plaintiff may still try the issues framed by her in her original complaint.
Nor is there merit to plaintiff's contention that her injury is the sort of continuous injury that will toll the statute of limitations. She is not the victim of a continuing tort: she had allegedly suffered a permanent injury.
*61 Lastly, plaintiff cites Fernandi v. Strully, 35 N.J. 434 (1961); Yerzy v. Levine, 108 N.J. Super. 222 (App. Div. 1970), and Lopez v. Swyer, 115 N.J. Super. 237 (App. Div. 1971), contending that the statute of limitations was tolled by virtue of New Jersey's discovery rule. In Fernandi the Supreme Court said (35 N.J. at 450): "The period of limitations may and should fairly and justly be said to begin to run when the plaintiff knows, or has any reason to know about the foreign object and the existence of the cause of action based upon its presence." (at 450).
In Lopez the Appellate Division said:
In other words, we believe the true rule in any medical malpractice case to be that a cause of action does not accrue until plaintiff is or should be aware of his injury and its causal relationship to the negligent treatment unless  as mandated by the inclusion of reference in the Yerzy affirmance to the "facts of this case"  the circumstance of delay suggests injustice will thereby be done. Examination of the potential for injustice requires that the situation be measured by the criteria laid down in the cases cited above, i.e., the danger of a fraudulent, false, frivolous, speculative or uncertain claim, or substantial difficulty in defendant's testimonial proof of a defense by virtue of the passage of time. [115 N.J. Super. at 248]
Plaintiff's position is that she did not know nor should she have known of any causal relationship between her injury in December 1973 and the failure of her physicians to advise her of the possible dangerous side effects of the contraceptives. In December 1973 plaintiff knew of her injury, knew that the proposed defendants had prescribed the contraceptives, and she alleges neither of them discussed the possible side effects with her. By April 1974 plaintiff knew that there was a possible relationship between the incident in December and the contraceptives, as is evidenced by her deposition. That she felt that the causal relationship between the incident and the pill was something more substantial than a possibility is inferable from the fact that she has not resumed the taking of the pill since December 1973.
Had plaintiff made even the most perfunctory investigation as to the nature of "Ortho-Novum" or of "Orval" in April *62 1974, she would have discovered the drugs' potentially dangerous propensities and that they are regularly distributed with warnings. This information is available in the Physician's Desk Reference and in pamphlets which are distributed to physicians and made available to patients. The warnings are even printed on the labels of some packets containing the drugs which are given to the users.
The language of Fernandi, supra is instructive:
The circumstances do not permit the suggestion that Mrs. Fernandi may have knowingly slept on her right but, on the contrary, establish that the cause of action was unknown and unknowable to her until shortly before she instituted suit. [35 N.J. at 451; emphasis supplied]
In the further disposition of Lopez, Justice Mountain stated:
* * * in an appropriate case a cause of action will be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim. [Emphasis supplied]. Lopez v. Swyer, 62 N.J. 267 at 272.
The court concludes that in April 1974 plaintiff's cause of action if any, against the proposed defendants was not "unknowable" nor was it undiscoverable "by the exercise of reasonable diligence and intelligence." Even should there be some question as to when the cause of action accrued, the court is not compelled to grant the plaintiff's motion.
It must be borne in mind that Mrs. Fernandi's claim does not raise questions as to her credibility nor does it rest on matters of professional diagnosis, judgment or discretion. It rests on the presence of a foreign object within her abdomen following an operation performed upon her by the defendant-doctors. Here the lapse of time does not entail the danger of a false or frivolous claim, nor the danger of a speculative or uncertain claim. [Fernandi, supra 35 N.J. at 450-451]
Further, the gravamen of plaintiff's claim is that the proposed defendants prescribed contraindicated drugs. Her *63 claim is predicated on matters patently of professional diagnosis, judgment or decision. Additionally, the injury complained of did not arise from anything so obvious as the presence of a foreign object. Causal connection of her injury to either or both of the prescribed contraceptives must be established by expert testimony. It cannot be said then that to grant plaintiff's motion would not entail the danger of a false or frivolous or a speculative or uncertain claim.
Plaintiff's motion to amend her complaint, adding fifth and sixth counts naming Dr. William Shanik and Dr. Sophia Preikstas, must be, and is, denied with prejudice for the reasons stated above.